UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :  22-cr-155 (TSC) |
| ANTONIO PAYNE | : |
| **Defendant.** | : |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(C) and 18 U.S.C. § 3142(f)(1)(E) of the federal bail statute, or in the alternative 18 U.S.C. § 3142(f)(2)(A). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### I.  Procedural History

The Defendant has been charged in a three-count indictment with one count of Count of Possession with Intent to Distribute 280 grams or more of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii); one count of Unlawful Possession with Intent to Distribute 50 grams or more of a Mixture Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii); and one count of Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c). The charges stem from the execution of a D.C. Superior Court search warrant at the Defendant's residence, which unearthed, just in the Defendant's bedroom alone, hundreds of grams of crack cocaine; hundreds of grams of

methamphetamine and amphetamines; two semi-automatic handguns; magazines; ammunition rounds; assorted paraphernalia; and $27,000 in U.S. currency. Elsewhere in the house were two rifles as well as one additional handgun. At Defendant Payne's initial appearance, the government moved orally for his detention and is now supplementing its oral request with a written motion.

## II.     Legal Authority

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted. *Id.*; *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *Smith*, 79 F.3d at 1210, *see also Williams*, 798 F. Supp. at 36.

There are four factors under Section 3142(g) that the Court must analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . ." 18 U.S.C. § 3142(e). A judicial determination that a defendant should be detained pending trial on

grounds of community safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987); *United States v. Alatishe*, 768 F.2d 364, 370 (D.C. Cir. 1985). With respect to the offenses with which Defendant Payne has been charged specifically, the legislative history of the statute reflects the risk that a defendant will continue to engage in drug trafficking if released, in itself, constitutes a danger to the community:

> The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . . The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."

S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad.News 3182, at 3195-3196

In this case, Defendant Payne is also subject to a rebuttable presumption that no condition or combination of conditions could reasonably assure the safety of the community and the defendant's return to court. Here, the defendant is charged with two counts of violations of the Controlled Substances Act, 21 United States Code *et. seq.*, both of which are punishable by more than 10 years' incarceration. Section 3142(e)(3)(A) provides that, subject to rebuttal by the person, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act…". In addition, Defendant is charged with one count of 18 U.S.C. § 924(c), which also triggers the rebuttable presumption. *See* 18 U.S.C. § 3142(e)(3)(B).

The indictment, standing alone, constitutes probable cause that the person charged committed the offenses charged and is "enough to raise the rebuttable presumption that no

condition would reasonably assure the safety of the community." *Smith*, *supra*, 79 F.3d at 1210; *accord United States v. Williams*, 811 F. Supp.2d 274, 276 n.2 and 277 (D.D.C. 2011) (citing *Smith* and *United States v. Carter*, 802 F. Supp.2d 180, 182 (D.D.C. 2011)). Relying on the legislative history of this provision, the U.S. Court of Appeals for the D.C. Circuit has observed that the rebuttable presumption covering serious drug trafficking offenses was included because of the "significant risk of pretrial recidivism" among persons charged with major drug felonies. *Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203)).

When the rebuttable presumption of Title 18, United States Code, Section 3142(e) is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *Id.* at 371. Although the Defendant's burden is not heavy, he must offer "at least some evidence," that he does not pose a danger to the community or a risk of flight. *See id.*; *see also United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010); *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Specifically, a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to the presumption. *See United States v. Garcia*, 312 F. Supp 3d 36, 40 (D.D.C. 2018) (quoting *Stone*, 608 F.3d at 946). While the burden of persuasion on the issue of detention remains with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001), even where the defendant offers evidence to rebut the presumption, the presumption is not erased and does not become "devoid of all force." *See id.*; *see also*, Taylor, 289 F. Supp. 3d at 63 (quoting *Jessup*, 757 F.2d at 382). Rather, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *Taylor*, 289

F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting Jessup, 757 F.2d at 384)); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011).

Here, for the reasons explained below the Defendant cannot overcome that presumption and a careful review of the 3142(g) factors make clear that there are no conditions or combination of conditions that could assure the safety of the community or the Defendant's appearance in court as required.

### A.   Nature and Circumstances of the Offenses Charged

Defendant has been charged in connection with running a larger scale drug trafficking operation out of his own bedroom in his family home involving cocaine base, cocaine powder, amphetamines, methamphetamine, and marijuana, among other controlled substances. The operation appears to have been somewhat profitable, based on the $27,000 in U.S. currency recovered from Defendant Payne's bedroom, and was protected by an array of semi-automatic handguns and assault rifles that were found in both Defendant's bedroom as well as the home.

The investigation into Defendant Payne began with officers responding to calls for sounds of shots fired in the 2400 block of Baldwin Cres Place in Northeast Washington, D.C. An unknown caller advised that a male subject, later identified as a relative of Defendant Payne, ran inside 2430 Baldwin Cres. Officers went to that address to check on the welfare of the individual and contacted the occupants, including Defendant Payne as well as the individual who had been shot. Detectives and patrol officers recovered surveillance footage from nearby residences, which showed Defendant's relative going to a car located nearby, then began returning to the residence, after which a car drove by out of which several shots were fired in the direction of the relative. The relative retreated inside, at which point an individual later identified as Defendant Payne exited

the garage holding what appears to be a black in color semi-automatic handgun and yells loudly about the shooting, after which he returns to the home.



Detectives then applied for and obtained a residential search warrant, signed by an Associate Judge of D.C. Superior Court. Once the warrant was signed, officers proceeded to conduct a systematic search of the residence, including an upstairs bedroom identified as belonging to Defendant Payne. In the bedroom, officers first found and recovered two semi-automatic Glock handguns, one of which was loaded, from a dresser that included Payne's mail matter. On Defendant Payne's bed was a micro-conversion kit, designed to assist an individual in stabilizing a handgun when firing.








There were three other firearms outside of Defendant Payne's bedroom, including two rifles as well as assorted magazines and a plate jacket.





With respect to the controlled substances, Defendant Payne's room was littered with twists containing suspected cocaine base; cooking equipment and a respirator mask; heat-sealed packages of marijuana; and a significant amount of amphetamines and methampetamines, not to mention an assortment of pills laying on the ground throughout the room. In total, among the various twists and other packaging recovered, officers recovered 468 grams of a white rock like substance which fielded tested positive for cocaine base, pictures of which are below.




 

Also in the room were 484 grams of a white powdery substance that field tested positive for cocaine powder, 115 grams of a hard rock like crystal substance that field tested positive for methamphetamines, and 710 grams of purple powder substance that field tested positive for amphetamines.[1] In addition to the various controlled substances, there was also a significant amount of paraphernalia, including measuring cups, utensils, and a respirator mask.

---

[1] To be clear, Defendant is only charged with possessing with the intent to distribute two controlled substances in the initial indictment – cocaine base and a mixture containing a detectable amount of methamphetamine. The government may seek a superseding indictment against Defendant Payne for the additional controlled substances found in his home.





Finally, officers recovered a significant amount of U.S. currency from Payne's bedroom, totaling

approximately $27,000.



B.   Weight of the Evidence

Here, the weight of the evidence against the Defendant even at this early stage is strong. Defendant can be seen on video leaving the residence approximately eight hours prior to the search with what appears to be a firearm in tow and was later detained in the home a few hours later. Officers then searched the premises and identified Defendant's bedroom, which had mail matter within it specifically addressed to Defendant Payne at 2430 Baldwin Cres, and one item which had

been dated as recently as March 25, 2022. The bedroom had male clothing in it, as well as a shoebox for Timberland boots, which would be consistent with what appears to be the Defendant's footwear as he is exiting the home earlier that day.

    C.    <u>History and Characteristics of Defendant</u>

Defendant Payne has a somewhat limited criminal history which includes one conviction for possession of a controlled substance, two traffic convictions, and two additional misdemeanors. Defendant has incurred four bench warrants, issued on three different dates, one of which appears to have been outstanding for approximately nine months. The government would also anticipate that counsel for Defendant Payne may raise his ties to the community given that he appears to have resided within the greater D.C.-metropolitan area for a significant amount of time with family members nearby. Nevertheless, as discussed further below, this does little to negate his overall dangerousness to the community and his risk of flight, given that all of these facts did not deter him from conducting this trafficking operation – aided by multiple firearms – out of his own home. *See United States v. Bess*, 678 F.Supp. 929, 935 (D.D.C. 1988) ("The history and characteristics of Defendant—his family and community ties, his educational and employment record, and his lack of prior convictions as an adult—did not deter him from committing armed robbery in the first instance.")

    D.    <u>Nature and Seriousness of the Danger to the Community</u>

The danger posed to the community by Defendant's release is significant and multifaceted. First, as noted by government counsel above, this danger includes the fact that Defendant could continue to conduct his drug trafficking operation, which he was able to do successfully and profitably from the comfort of his own bedroom. The quantities of controlled substances in this case are significant, as is the amount of money, while the presence of paraphernalia and equipment

that could be used to convert cocaine powder to cocaine base indicates a level of sophistication to the operation. Furthermore, the laws implicated by Defendant's conduct recognize this danger given that if convicted at trial he would face a mandatory minimum of 10 years' incarceration on Counts 1 and 2 of the indictment as well as an additional mandatory term of five years' imprisonment on Count 3. [2] Second, the Court cannot and should not ignore the presence of the firearms in Defendant's bedroom as well as the other handguns, rifles, ammunition rounds, plate vest, and magazines that were recovered from throughout the home. The danger that the presence of such firearms poses is obvious and the fact that this investigation was spurred on by a shooting in broad daylight at a relative of the Defendant, which caused Defendant to leave his home and brandish his own firearm in the middle of the street, only serves to underscore that fact.

### III.   Conclusion

The Court should grant the government's motion to detain Defendant Payne pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   /s  
Will Hart
D.C. Bar No. 1029325
Assistant United States Attorney
601 D St. NW
Washington, D.C. 20530
Telephone: (202) 730-5711
E-mail: William.hart@usdoj.gov

---

[2] The government would also argue in the alternative that Defendant presents a flight risk given the fact that he is facing a significant amount of mandatory incarceration if convicted at trial.